Good morning, Your Honors. May it please the Court, my name is Shai Oved, O-V-E-D. I represent the appellant, Noam Bouzaglou, who is present with me. I apologize for mispronouncing your name. That's okay. I don't get it right. I might have got it wrong. Your Honors, we're here today based on the lower courts entering a and applying rest judicata. There are two main issues that we're arguing are in error. It's one, the application of the summary judgment itself, and two, the size of the punitive damages awarded. This case is about the financial death of the debtor. When I look at the cases with Sunquist, for example, where Bank of America was issued a $45 million judgment for violating the automatic stay, I think to myself, wow, what did this debtor do? I'm sure you've seen it in the transcripts and the arguments. Excuse me, sir. Isn't the only issue in this case whether rest judicata applies? In other The question is whether, and it appears, I know you can test this, but it appears that the fraud determination in the state case and the fraud determination necessary to a non-discharge action are the same pretty much. Since the fees were awarded in the state case, I don't know how you get to their validity except if you can get rid of rest judicata first or collateral issue preclusion. Your Honor, with respect to the rest judicata issue, one of the main elements are- That's the only issue. Isn't that the only issue? Well, one of the issues that we find troubling is there was no privity in the ability of Mr. Yeah, and that's the interesting and significant issue in the case, and the only issue, whether that matters. And we believe that that's the prime target of the basis, because for the summary judgment to apply, all the inferences, or if there are any material issues, then you should not issue summary judgment. I'm sorry, what's the issue? What's the issue of fact? Your Honor, the underlying state court complaint included a series of allegations. There were 12 causes of actions. We don't know what the jury based their decision on for finding the fraud and what the punitive damages were based on. Unfortunately, I didn't represent the debtor in the state court, so I didn't participate. I wasn't involved. I came into this case to assist the debtor with a fresh start, and public policies afforded debtors. We think one of the sixth element that's not addressed is the public policy of whether the bankruptcy court should have applied res judicata. It's an additional element. And we don't see that here. But it's not, I mean, res judicata, which as I learned it is claim preclusion, and this was claim preclusion. There isn't a public policy exception, but there is with regard to issue preclusion. You misstate the case law in that regard, but this is an issue preclusion case as I understand it. I'm confused by the question, but I understand you're limiting the issue. We look at it as a bigger picture as to the fraud, Your Honor. When I argued the Ghomeshi case, we talked about an element of damages. That case also involved a contractor where damages were awarded pre-petition and a judgment had been entered. When we tested whether those damages were non-dischargeable as to the debtor, the bankruptcy court considered the underlying damages. They didn't apply the Dela Cruz case or Cohen v. Dela Cruz and say, oh, everything that flows from it is non-dischargeable. They actually took into account what the damages were for. In this particular case, the debtor is a contractor, 14 years. He's a simple person. He's not an attorney. He was approached by the debtor to rebuild a home in Santa Monica. He didn't prepare the underlying contracts. He didn't prepare any of the documentation. He didn't prepare the quit-claim deeds. An attorney that was disbarred was the person that handled those things. My client, to this date, had been ready, willing, and able to and did comply with the contract. He rebuilt this entire home. Yeah, but he was, he had a, he, that was, he, those, those facts were litigated in the state court, isn't that right? Again, At the trial level? They were. And they resulted in a judgment for fraud? Yes, Your Honor. And the question is whether or not that judgment for fraud should be applied in the bankruptcy court with respect to non-dischargeability, isn't that right? Yes, Your Honor. So we're not re-litigating the facts here of the state trial court, are we? We're not, but we are going to, we need to decide whether we should give that judgment issue and res judicata effect for purposes of non-dischargeability. What we don't know is why the jury reached that conclusion. There was just, hey, fraud. It didn't have all of the elements that we, All right, let's suppose, let's suppose we thought all that was wrong and that there was, in fact, a sufficient overlap between the issues that there would otherwise be issue preclusion. What about, I mean, to me, the only interesting issue here is the fact that he wasn't able to appeal. He wasn't able to, and the question is whether the not, inability to appeal, the BAP said that his inability to appeal was the result of his voluntary act of filing the bankruptcy in the first place, which resulted in the fact that his, the trustee took over his claims. Are you contesting that as an inappropriate ruling or what do you have to say about whether the fact that the trustee chose not to appeal this is or isn't binding on Mr. Bougaluso? That is one of the problems. Sorry, there's some echo. The issue with respect, just a moment, just a moment, and I would like to reserve, and I would like to reserve our time, but let's just, let's just, just a moment, just a moment, because we can fix it. Now? Now? Testing. I was here early, so I heard the sound check. Sound check. Maybe better? Is it working now? Sounded okay. It's fixed? Okay. Proceed. Your Honor, with respect to that exact point, the privity argument and the inability to prosecute the appeal because of the bankruptcy is exactly the issue that we're dealing with. The position of the trustee, and we point out in our brief, opening brief, the interest of a trustee in a bankruptcy are seldom aligned with the debtors and or the creditors. So they're not in privity with each other. The trustee has no interest in He doesn't have, I hate to say it, but almost pro bono counsel that's been helping the poor debtor going through these processes when he came to office. Particularly with a claim that it's not going to be discharged in a bankruptcy, right? In other words, the fraud claim, whatever it is, if it continues, is not going to be discharged in a bankruptcy. We don't even get to that question because it was determined on a summary judgment standard. And those inferences, rather than reviewing the record in the light most favorable to the non-moving party, the bankruptcy court, who also pointed out, however, it is true, as the debtor points out, that the debtor was not party to the appeal at the time the appellate court ruled on the appeal. That's part of the excerpts, Volume 1, on page 49 for the court's reference. And again, I want to point out, the debtor and Timothy McGinty entered into a contract to develop the property. McGinty had his own financial issues. There were judgments against the property. The attorney structured the transfer of the property and the development of the property so that Mr. Bozoglo could develop the property, obtain the financing, and they could both benefit from that transaction, which is common. But you're still arguing what was decided in the state trial court. And that would be of whether the fact that the debtor himself did not have control over the appeal, even though, as you point out, the trustee had somewhat conflicting interests with regard to whether to appeal, is a reason why this your preclusion doesn't apply. I mean, that seems to be the only leg you have to stand on, and you don't seem to want to argue about it. I apologize. I don't mean to be skirting the issue, Your Honors. The trustee had no incentive. When we approached the trustee and said, you need to abandon it, we filed our motion to compel the abandonment. It was the plaintiffs that went to the trustee and said, you know what, we'll buy those rights. They're valuable. You can now make money from it. Okay. So we continued it for 30 days. We said, okay, what's going on? Where's the offer? Let's get to the sale. You made an offer, right? Sure. They typically, in the course of a bankruptcy, you'll get a sale motion, and you'll be subject to overbids. The debtor could have at that point said, you know what, I really want to go forward with those appeal rights. But that never happened here. The abandonment motion was denied without prejudice after Judge Donovan sat on it for about 30, 35 days. Meanwhile, the case gets closed, the appeal rights go forward, but only after they offer to buy these rights. I don't understand what the offer to buy the rights have to do with anything. The point is that the abandonment motion was denied for whatever reason, and the question is whether in that situation there is any reason not to apply an issue preclusion. Is there any case law about that question? Yes, Your Honor. And that's that Hudson v. Davidson case that we point out with respect to the trustee's interest being divergent. We also looked at, Your Honor, I know in the last couple months you had looked into the Rangel case where you said res judicata should not apply in a settlement class action case because the responding party was on notice of the settlement and didn't object to that settlement. And then a couple months before that in the Ruiz case, Your Honor, also looked at the res judicata effect and said, you know what, when there are multiple issues for the basis, the court will reverse and remand because that's not the sole basis for determining that judgment. The Ruiz v. Shahnamesh City is the case that I'm referring to. It's docket 1435030. And your other case, Your Honor, it's a published case. It's number 16-56826. I see I only have a couple minutes. Would you like to reserve your time? And I'd like to reserve that, please. You may. Thank you, Your Honor. Good morning, Your Honors. John P. Byrne for the appellee. There is no room to argue under California law that issue preclusion should not apply in this instance. While there are exceptions to the otherwise applicable use of res judicata, in instances where a court has exercised so-called discretion in the interest of avoiding a manifest injustice to not apply res judicata, the circumstances that warrant such a use of this rare doctrine under California law aren't present here. This is a little peculiar because the debtor was not able himself to bring an appeal. The appeal rights were vested in the trustee because of the bankruptcy. But in terms of California issue preclusion law, the fact is that the person who was ultimately going to have to pay the amount of money was not in control of the appeal. And whether you call it a privity problem or something like it, it does seem like a peculiar circumstance in which the reasons for applying issue preclusion, i.e. you had a chance to litigate it just once, aren't actually true. He didn't have a chance to litigate it once. His estate did, but his estate wasn't going to have to pay it. There's no authority under California law that suggests that the inability to appeal affects the finality of a judgment. Really? Yes. You mean that there was just some arbitrary bar in an appeal? My understanding of California issue preclusion law is that unlike federal issue preclusion law, it doesn't run from the trial court judgment. It runs from the end of the litigation, i.e. after all the appeals are done. And if the appeals are precluded for some reason that is external to the litigation, why is there then issue preclusion? Well, there's California authority that states that a pending appeal doesn't necessarily render the underlying judgment not final and that it isn't an impediment to... I thought it does render it not final. Am I wrong about that? Well, there is a... It doesn't under federal law, but I thought it did under state law. The case is... Yes. The case is called Collins v. Ramish, 182 Cal. No, I'm sorry. The case is called Wood v. Herson, H-E-R-S-O-N, 39 Cal. 737 at 747-48, whereas... Is this in your briefs? Is this case in your briefs? It is not. It is for the proposition of what? Yes. Quote, It is well settled that a dismissal or discontinuance of a former action at any time before the trial of a subsequent action or even before the conclusion of such trial completely removes the objection that a former action is still pending and the judgment would thereby... Well, that doesn't say what you said it says. It says if it's not pending, then it's not pending, but it doesn't say if it is pending, it's preclusive. In this... It says the opposite. It says that the mere fact that at a time of adjudication the appeal hadn't concluded doesn't necessarily render the underlying judgment not conclusive. It said... Well, you just read me. It said that if it's dismissed, then it becomes preclusive. That's what I understood here. Just read me. Well, in any event, we shouldn't be talking about a case that hasn't been cited. If you want to send that in your 21HA letter, go ahead. Yes. But I... The censure in me seemed to say the opposite of what you've represented. So assuming for the moment that California law is what I said it is, which is that the issue of preclusion runs from the end of all the litigation and not from the trial judgment, then what? Well, we have a fact that the appeal was dismissed. Then the question is because that dismissal of the appeal rendered the judgment final, whether or not there's room under California law to say that there should be some exception to the rule that the judgment, which was thereby rendered final, shouldn't apply. Now, in this particular case, the California Court of Appeal, in September of 2016, issued an order to show cause. Why this shouldn't be dismissed? That court did not dismiss the appeal until three months later. At the end of December, it decided to. In the interim, whatever abilities Mr. Bozzaglo had, whatever he did, wasn't enough to persuade the appellate court that it shouldn't be dismissed, thereby rendering the judgment final. Well, it did render it final. The question is whether it's a judgment as to which issue preclusion should apply for the reasons that it was final. Now, the other thing that you argue is that there was an associated case against his, you say it was an alter ego corporation. Was it determined to be an alter ego corporation? It was referred to as an alter ego by both the trial court and the appellate court. California Court of Appeals. Okay. And it raised it in this context, which is important, the California Court of Appeals. Well, if it's an alter ego and there was a $25 million judgment against it, it's sort of immaterial because if it's an alter ego, that $25 million is running against Mr. Bozzaglo anyway. I don't disagree with that. Is your understanding that the $25 million and what was the other judgment for, $8 million, are cumulative or are they the same? No, they're separated and for whatever reason, the state court proceedings did not impose the $25 million on Mr. Bozzaglo. So it's $33 million? I don't believe so. What do you mean you don't believe so? Is it $25 million or $33 million? I thought the judgment was $15 million against the corporate entity and $8 million against... Oh, I see. I see. All right, so is it $23 million or $15 million? It's $23 million against Mr. Bozzaglo. At the end of the day, it was $8 million against Bozzaglo and it was approximately $15 million against the corporate entity. But if it's an alter ego, then it's actually against Mr. Bozzaglo. There was no... That's not what the judgment provides. That's what alter ego means, right? It ought to. I don't disagree with that. But the judgment has separate recoveries and they were not... Nobody made a motion... All I'm trying to find out is that they're cumulative. There's no possibility that the $15 million includes the $8 million. Right? That's your understanding? Yes. Okay. All right. I want to wrap up, I suppose, with this notion that there was interference. And there wasn't. As a matter of evidence, there's nothing to support that claim. First, there's the proposition that the appeal didn't belong to Mr. Bozzaglo, and so there's no interference with any of his property rights. Second, to the extent that things have been mischaracterized as interference or manipulation, what's been referred to is communicative acts from attorneys and from trustees regarding litigation activity. Those things aren't interference. Those things are absolutely privileged under a litigation privilege. And so, as a matter of evidence, there was no cause for this bankruptcy court to find any of the material facts that we submitted to be controverted. Thank you. Thank you very much again, Your Honors. Again, I think that's an excellent point, and I want to clarify. There was a $1.3 million judgment as to the corporation, an $800,000 judgment as to Mr. Bozzaglo. There was an $8 million, a 10-times award for punitive damages as to Mr. Bozzaglo, and then a $13 million, 10-times award on that. And when I sum those together, it's a total of $25 million. Even though they refer to him as an alter ego, they were not a joint inseparable judgment. They were separate judgments. And the Court of Appeal dismissed Mr. Bozzaglo for having the opportunity. The issue was, yes, there was this three-month window in order to show cause, but Mr. Bozzaglo had done what he could have done because he didn't own those appeal rights. He was not in privy, was not able to prosecute it, and the trustee had no incentive to on its own or on his own. The court asked about the res judicata issues. We've cited to the Lucido case versus Superior Court, and again, res judicata should not be a hyper-technical and archaic approach of a 19th-century pleading book, but considered with realism and rationality, quoting the Supreme Court, Asher versus Swenson. This is not a firm and a fixed policy. This is not a requirement. And therefore, by considering res judicata on a summary judgment level, when you have these material issues, you're not looking at them in the light most favorable to the non-moving party. Okay. Are you – let me understand. What is it that you are actually asking for? Are you asking for a relitigation of the underlying action in bankruptcy court? Your Honor, if we need to go there, then yes. It should be remanded for a trial so that he can at least say what the transaction involved, what the damages were or were not, because the testimony was in opposition to summary judgment is he was ready to perform and had to check. You want to retry the entire case that was in the state court in the bankruptcy court? Is that what you want? Only the fraud. Only the non-dischargeability. The fraud. There's only one cause of action that remains in the bankruptcy court. We're not trying to relitigate everything. It's just the one cause of action under 523A2. But I have to point out, we don't even have to – Can that be separated from everything else? The state court had 12 different causes of action. That's why it was an extended trial proceeding. The bankruptcy issues are very limited. It's just the 523A2A, non-dischargeability, period. So you have to determine whether or not there was fraud. Correct. That's your position. Okay. But I have to – I just want to say one thing with respect to the damages. We can entirely reverse this case, Your Honor, because the punitive damages were excessive. They killed the debtor. It wasn't to punish the debtor. And under state law, even an award of $70,000 that leads a debtor into bankruptcy is grounds to have those damages reversed. This is an $8 million award against an individual who just wanted to comply with a contract. He's a business person. He's a contractor. He said let's – So are you asking the bankruptcy court to disregard the punitive damages? I think the court has the ability – In the alternative? the punitive damages in and of itself. I want to point out just one last point. They chose – they elected their remedy and said, you know what, we don't want the $800,000. They said, you know what, we'll take the house. And what they did with the house is they ended up cashing out a million dollars instead of getting the check for the $500,000. So, again, no damages. They used the money to fund $800,000 in attorney's fees. And that's where we are today, Your Honors. Okay. Thank you. Thank you. Thanks, counsel. The case just argued is submitted.
judges: Schroeder, Berzon, Nelson